# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ERICKSON, KERNELL, DERUSEAU, & KLEYPAS,<br><br>              **Movant,**<br><br>v.<br><br>SPRINT SOLUTIONS, INC. and SPRINT COMMUNICATIONS COMPANY L.P.,<br><br>              **Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)     **Case No. 16-mc-212- JWL-GEB**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on movant's Motion to Quash a subpoena (ECF No. 1).  For the reasons outlined below, the Motion to Quash (**ECF No. 1**) is **GRANTED IN PART** and **DENIED IN PART**.

## Background[1]

This motion arises from a subpoena issued in connection with a pending case in the U.S. District Court for the Northern District of California, *Sprint Solutions, Inc. v. Snyder, dba Thirty-One Echo, Inc.*[2]  The subject of the California dispute is an alleged scheme by the Thirty-One Echo corporation to illegally purchase and resell Sprint Solutions' ("Sprint") wireless phones.  Sprint claims Thirty-One Echo violates both the

---

[1] The "Background" section is based upon the parties' filings and should not be construed as judicial findings or factual determinations.

[2] *Sprint Solutions, et al. v. Snyder, et al.*, N.D. Cal. Case No. 15-2439-EJD.

federal Trademark Act[3] and the Computer Fraud and Abuse Act,[4] and asserts various supplemental state law claims, including breach of contract, unfair competition, tortious interference with Sprint's business enterprise, conspiracy, and fraud.

Pending in the Northern District of California are two motions filed by Thirty-One Echo:  1) a motion to dismiss the case; and 2) a motion to stay discovery while awaiting a decision on the dispositive motion.  Despite the pending motion to stay discovery, Sprint proceeded with discovery, and among other types of requests to Thirty-One Echo, served 23 non-party individuals and companies with subpoenas.[5]  Sprint alleges Thirty-One Echo's law firm, Erickson, Kernell, Derusseau, & Kleypas ("EKDK"), interfered with those subpoenas by encouraging the third-parties not to comply.[6]  Seeking information to prove EKDK's interference, Sprint then served a subpoena on EKDK to turn over any communications relating to the third-party subpoenas.

Sprint served EKDK with its document subpoena on March 8, 2016, which commanded production of documents by March 23.[7]  EKDK claims its written objections were mailed on March 23, although Sprint argues the official postmark displays a mailing date of March 24.[8]  As evidenced by the parties' briefing, the parties communicated by phone, email, and held at least one face-to-face meeting to discuss the subpoena.[9]

---

[3] The "Lanham Act," 15 U.S.C. § § 1114(1), 1125(a) and 1125(c).

[4] 18 U.S.C. § 1030, *et seq.*

[5] *See* Mem. Supp., ECF. No. 2, Ex. A: Subpoena Duces Tecum.

[6] *See* Resp., ECF No. 5.

[7] *See* Mem. Supp., ECF. No. 2, Ex. A: Subpoena Duces Tecum.

[8] *See* discussion *infra* Part II.A, pp. 4-5.

[9] *See* Mem. Supp., ECF No. 2; Resp., ECF No. 5.

However, none of the requested documents were produced, and on April 11, EKDK filed its motion to quash the subpoena.

## EKDK's Motion to Quash the Subpoena
## (ECF No. 1)

### I.      Subpoena at Issue

Before considering the parties' arguments and the issues surrounding the motion to quash, it is appropriate to first review the contents of the subpoena.  The subpoena contains the following requests:

> 1.      Excluding privileged communications, all documents relating to the … third-parties that received a subpoena from Sprint in this lawsuit.
>
> 2.      All communications between you and the [third-parties who received subpoenas in the underlying lawsuit], including, but not limited to, any applicable employees, attorneys, or in-house counsel, that relate to a subpoena sent by Sprint, this Lawsuit, and/or any motions or other pleadings filed in this lawsuit.

Each request includes a list of 19 companies and individuals who received the initial third-party subpoenas from Sprint.

### II.     Timeliness

As a threshold matter, the parties disagree upon the timeliness of both EKDK's objections to the subpoena and the filing of its motion to quash.  Although the perceived technical deficiencies in EKDK's responses may or may not be valid and the Court chooses to address the motion on its merits, the timeliness arguments are briefly addressed.

## A.    Objections

The  Federal  Rules  of  Civil  Procedure  set  forth  various  subpoena  service requirements and response deadlines, contingent upon the manner in which the subpoena was served.  Specific to the service of objections, Fed. R. Civ. P. 45(d)(2)(B) requires:

> The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.

Also applicable here is Rule 6(d),[10] which supplements the 14-day compliance period by providing:

> When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period . . . .

Because the subpoena at issue was emailed to EKDK, Rule 5(b)(2)(E) comes into play, stating:

> ***Service in General.*** A paper is served under this rule by: . . . (E) sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served . . . .[11]

Applying these rules, Sprint asserts EKDK's initial written objections to the subpoena were untimely served.  Because the subpoena at issue was served electronically on March 8, 2016, Rule 6(d) and 5(b)(2) provide three additional days for compliance— which equates to a total of 17 days for EKDK to serve its objections—making objections due March 25.  However, Rule 45(d)(2)(B) specifies objections must be served by the *earlier* of either the time listed on the subpoena or the calculated date.   In the subpoena,

---

[10] *See Tank Connection, L.L.C. v. Haight*, No. 13-1392-JTM-TJJ, 2015 WL 3571424, at *2 (D. Kan. 2015).

[11] Neither party argues EKDK did not consent to receive the subpoena in writing.

the time specified for EKDK's compliance was March 23; therefore, objections must have been served by that date.

Although Sprint contends EKDK served its objections late, it is not so evident to the Court. Rule 5(b)(2)(C) makes clear that service is complete upon mailing. EKDK claims its objections were mailed on March 23,[12] but the envelope which contained its objections[13] has two postal markings. One mark, dated March 23, 2016, appears to be the postage meter stamp from a metering machine, while the other, dated March 24, 2016, appears to be the postmark from the U.S. Post Office. Relying on this latter mark, Sprint contends the objections were one day late. However, aside from the photocopy of the envelope bearing both marks, neither party provides additional evidence clarifying the identity of either mark. Additionally, neither party adequately addresses the issue of which mark constitutes official mailing, nor did the parties introduce controlling authority on the issue.

Even if EKDK's objections were one day late, courts in this district have allowed objections to stand, regardless of timeliness, where there is no evidence of bad faith or there are unusual circumstances.[14] The purpose of the service requirement is to prevent parties from conducting surprise litigation. But here, the parties conferred regarding their stance on the subpoena, and they were in contact by email, phone, and at least one face-to-face meeting purportedly discussing the objections.[15] Finding no prejudice to Sprint

---

[12] *See* Reply, ECF No. 8.
[13] *See* Resp., ECF No. 5, Ex. 3 at 6.
[14] *See Tank Connection*, 2015 WL 3571424, at *2-3; *Ficep Corp. v. Haas Metal Eng'g, Inc.*, No. 14-243-CM, 2015 WL 566988, at *1 (D. Kan. 2015).
[15] *See* Resp., ECF No. 5; Reply, ECF No. 8.

under the circumstances, the Court overrules Sprint's objection regarding timeliness of EKDK's initial objections.

### B.      Motion to Quash

Sprint in its Response further contends EKDK's Motion to Quash was untimely filed.  Although Fed. R. Civ. P 45(d)(3) requires a motion to quash to be "timely filed," the rule does not define "timely."   Notwithstanding the lack of a technical requirement, "the court may excuse a failure to meet the deadline when the delayed filing results from attempts to informally resolve the disputes about a subpoena without judicial intervention."[16]   The motion was filed on April 11—less than one week after Sprint's final letter to EKDK discussing the objections.[17]   Under these circumstances, the Court elects to consider the merits of EKDK's motion.

### III.    Merits

EKDK offers three primary reasons why it believes Sprint's subpoena must be quashed:  it is overly broad, seeks irrelevant information, and is an improper attempt to obtain information protected by the work-product doctrine.  Each of EKDK's objections will be addressed in turn.

---

[16] *Dr. Greens, Inc. v. Spectrum Laboratories, LLC*, No. 12-mc-226-KHV-GLR, 2012 WL 3111746, at *1 (D. Kan. July 31, 2012) (citing *Hartz Mountain Corp. v. Chanelle Pharm. Veterinary Prods. Mfg. Ltd.,* 235 F.R.D. 535, 536 (D. Me. 2006)).

[17] Letter from Gail E. Podolsky to James J. Kernell (Apr. 5, 2016) ( ECF No. 2, Ex. F).

### A.    Overbreadth

The standard scope of discovery as applied to a subpoena is the same standard found in Rule 26(b)(1),[18] which allows parties to, in part, "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  In assessing overbreadth, the Court will first look to whether the request is overbroad on its face.  The District of Kansas generally applies a two-pronged test.[19]  The objecting party bears the burden to show facial overbreadth.[20]  If the request "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information,"[21] the request is facially overbroad.  The Court may also look to whether the request contains a limitation on the time frame from which documents must be produced, as the lack thereof could indicate the request is overbroad.[22]

EKDK contends both requests contained in Sprint's subpoena are overbroad, and the Court partially agrees.  Sprint's first request seeks "all documents relating to" nineteen third-parties "that received a subpoena from Sprint" in the underlying lawsuit.[23]  This request may be facially overbroad because it uses the omnibus term "relating to," but this does not end the court's inquiry.  There is a question whether the omnibus term modifies a sufficiently narrow category of information because the phrase, "that received

---

[18] *Tank Connection*, 2015 WL 3571424, at *3; *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D. Kan. 2003).
[19] *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006).
[20] *Tank Connection*, 2015 WL 3571424, at *3.
[21] *Moses*, 236 F.R.D. at 673.
[22] *Tank Connection*, 2015 WL 3571424, at *5.
[23] *See* Mem. Supp., ECF. No. 2, Ex. A: Subpoena Duces Tecum.

a subpoena from Sprint in this Lawsuit," can be interpreted multiple ways. A practical reading of the request, given the background of the case, leads to the conclusion Sprint is requesting only those documents exchanged between EKDK and the third-parties regarding the California lawsuit. However, the plain reading of the request leads to a conclusion that, on its face, the request seeks *all documents* EKDK may have *relating to those third-parties* who happened to have received a subpoena—the subpoena clause describes the parties, but not the documents sought. In that light, the request is overbroad considering the purpose of the subpoena, and EKDK's objections as to overbreadth regarding Request No. 1 are sustained.

Despite the overbreadth of the first request, the subpoena's second request gets to the heart of the information Sprint seeks. The second request restricts the information sought to "All *communications* between you and the following third-parties . . . that *relate to a subpoena* sent by Sprint, this Lawsuit, and/or any motions or other pleadings filed in this lawsuit (emphasis added)."[24] Although EKDK asserts the omnibus term "related to" again creates facial overbreadth, the Court disagrees. Applying the second prong of the test for such omnibus terms,[25] the Court finds Sprint unambiguously requests documents related to the subpoena sent by Sprint, or the underlying lawsuit, which is a specific group of documents, narrowly tailored to achieve the purpose of the subpoena. Therefore, EKDK's overbreadth objections to the second request are overruled.

---

[24] *See* Mem. Supp. ECF. No. 2., Ex. A: Subpoena Duces Tecum.
[25] *Moses*, 236 F.R.D. at 673.

### B.    Relevance

EKDK also asserts the subpoena requests information irrelevant to any claim or defense in the underlying lawsuit.  As discussed above, Fed. R. Civ. P. 26(b)(1) outlines the scope of discovery as applied to subpoenas.  At the discovery stage, relevance should be broadly construed,[26] and parties may obtain discovery on any matter relevant to a claim or defense that is proportional to the needs of the case.[27]  Where a request is relevant on its face, the party opposing the request has the burden to disprove relevancy; however, where the request is not relevant on its face the requesting party has the burden to show relevancy.[28]

Although the Court found the first request to be overbroad, the Court is not convinced the information requested as a whole lacks relevance to the claims and defenses of the underlying lawsuit.  Some of the underlying claims in the California case involve fraud, which includes elements of truthfulness and intent.  The parties' conduct and participation in meaningful discovery within the litigation could be relevant to the weight of those claims.  Considering the accusations leveled by both parties, there are serious underlying issues regarding the parties' cooperation in adjudicating the case on its merits.  At the very least, the conduct of counsel during litigation is always of concern to the court.  As such, the information requested by the subpoena is relevant and reasonably calculated to lead to the discovery of admissible evidence for use in adjudicating the

---

[26] *Id.* at 671.
[27] Fed. R. Civ. P. 26(b)(1).
[28] *Moses*, 236 F.R.D., at 671*; Tank Connection*, 2015 WL 3571424, at *4.

California case.  Furthermore, as narrowed, the information sought will not create a burden to EKDK that is disproportionate to the needs of the case.

### C.   Privilege

Along with overbreadth and relevance objections, EKDK claims the information requested is protected under the work-product doctrine.  The work-product doctrine is enshrined in Fed. R. Civ. P. 26(b)(3)(B) and protects the "mental impressions, conclusions, and legal theories" of the party's attorney from documents prepared in anticipation of trial or litigation.  The party seeking to assert privilege has the burden to prove work-product doctrine applies.[29]   Rule 26(b)(5) and Rule 45(e)(2)(A) both specifically require a party claiming privilege to (1) expressly make the claim; and (2) describe the nature of the documents not disclosed without revealing the privileged information itself so the parties may evaluate the claim.  As such, in order to comply with Rule 26(b)(5) and Rule 45(e)(2)(A), the party claiming privilege must provide to the court a privilege log.[30]   A blanket claim as to the applicability of the work product doctrine does not satisfy the burden of proof.[31]

EKDK relies on the Kansas federal case of *U.S. Fire Ins. Co. v. Bunge N. Am. Inc.*[32] to argue because EKDK was not retained by defendants until after the lawsuit was filed, all documents created after the commencement of the action are necessarily

---

[29] *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).
[30] *Moses*, 236 F.R.D. at 676; *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 244 F.R.D. 638, 645 (D. Kan. 2007).
[31] *Moses*, 236 F.R.D. at 676.
[32] *U.S. Fire Ins. Co. v. Bunge N. Am. Inc.*, No. 05-2192-JWL-DJW, 2007 WL 1531846, at * (D. Kan. May 25, 2007).

protected work-product and therefore subject to privilege.[33]  However, the court in *U.S. Fire* did not create such a blanket rule but actually held the opposite.  Documents created after commencement of the action are not, in and of themselves, entitled to privilege and remain just as discoverable as other relevant documents unless a specific claim of privilege is brought.[34]  Here, the creation of the requested documents after commencement of the California action does not automatically create work-product protection.  EKDK has failed to offer any information as to the claimed privilege other than blanket claims.

Even if some information sought by Sprint might be protected, EKDK provided no privilege log to Sprint or the Court as required by Rules 26(b)(5) and 45(e)(2)(A).  Therefore, EKDK's claim of work-product protection is overruled pending submission of a proper privilege log.

## D.    Time Limitation

Having ruled on the arguments presented by both parties, the Court would like to address another issue involving both overbreadth and relevancy which neither party briefed in their submitted materials.  The documents sought by the subpoena are those which exist from January 1, 2011, to the present date.  The underlying California case was not commenced until 2015, and any alleged interference with subpoenas could not have occurred before the case was filed.  Considering the purpose of the subpoena is to

---

[33] *See* Mem. Supp. ECF No. 2, at 7.
[34] *See U.S. Fire Ins. Co. v. Bunge N. Am. Inc.*,  244 F.R.D.638, 645 (district judge's ruling upholding magistrate judge's ruling on review) (noting, "There is no basis for a blanket protection of such documents from discovery. Moreover, the application of the work product doctrine or attorney-client privilege to any particular document is not before the Court . . .").

retrieve documents relating to EKDK's alleged interference, information from four years before the date of those communications is not relevant to the purpose of the request and the time scope of the subpoena is overbroad.  Therefore, the time frame limitation of the subpoena is narrowed from the date of filing of the California case to the date of this order.

## IV.    Attorney Fees

Both parties seek attorney fees and expenses related to the motion to quash. Pursuant to Fed. R. Civ. P. 45(d)(1), if the court finds the party or attorney has failed to avoid undue burden or expense on the person subject to the subpoena, the Court should impose an appropriate sanction.  Under the facts of this case, the Court declines to award fees and expenses to either side; each will bear their own costs.

## V.    Conclusion

**IT IS THERFORE ORDERED** that EKDK's Motion to Quash (ECF No. 1) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.  The motion is **GRANTED** as to Request No. 1 of Sprint's subpoena to EKDK.   The motion is **DENIED** in that EKDK must produce all non-privileged communications responsive to Request No. 2 of Sprint's subpoena from June 2, 2015, until the present date by no later than **August 11, 2016**.  For any documents withheld under claim of privilege, EKDK is required to submit a proper privilege log in compliance with Fed. R. Civ. P. 45(e)(2)(A).

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 12th day of July 2016.


s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge